**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SAAKET VARMA,

Plaintiff,

v. CASE NO.:

IQVIA INC.,

Defendant,

_________________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, SAAKET VARMA, (hereinafter "Mr. Varma" or "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against defendant, IQVIA INC., (hereinafter "IQVIA," "Company," or Defendant") and states the following:

**INTRODUCTION**

1. The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on his race, national origin and perceived disability and retaliation in violation of Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"). In addition, Plaintiff seeks to redress

violations by Defendant of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his race, national origin and disability and retaliated against him in violation of his rights under the FCRA. Plaintiff further alleges that Defendant unlawfully interfered with the exercise of Plaintiff's FMLA rights and unlawfully retaliated against him for exercising those rights in violation of the FMLA.

3. As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Polk County, Florida.

**PARTIES**

8. The Plaintiff is SAAKET VARMA, a 47-year-old South Asian Indian male who resides in Polk County, Florida, with an address of 4034 Alissa Lane, Haines City, FL 33844.

9. Mr. Varma was diagnosed with adjustment disorder by Dr. Paladugu on March 10, 2023. The medical records show that Mr. Varma presented with worsening anxiety due to workplace stress, feeling overwhelmed, and difficulty focusing on work tasks.

10. During the period from February 7, 2022, until May 19, 2023, Defendant employed Plaintiff as an Associate Data Science Director.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the FMLA and the FCRA.

13. The Defendant is IQVIA INC., a corporation principally located at 100 IMS Drive, Parsippany, NJ 07054, with additional locations including 1000 N Ashley Dr, Tampa, FL 33602.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Polk County, Florida, where Plaintiff performed remote work.

15. At all times material herein, Defendant employed approximately 84,000 employees globally, with more than 1,000 employees within 75 miles of Plaintiff's work location, and met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the FMLA.

16. Accordingly, Defendant is liable under the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff and is liable under the FMLA for unlawfully interfering with Plaintiff’s rights and for retaliating against Plaintiff in violation of the FMLA as more fully alleged herein.

**ADMINISTRATIVE PREREQUISITES**

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On or about March 7, 2023, Plaintiff timely dual-filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations

("FCHR") against Defendant alleging race and national origin discrimination.

19. On September 10, 2024, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination against Defendant.

20. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

## GENERAL ALLEGATIONS

21. On February 7, 2022, Defendant hired Plaintiff as an Associate Data Science Director, working remotely from his home in Polk County, Florida, at an annual salary of $150,000 plus 15% bonus potential.

22. As an Associate Data Science Director, Plaintiff was responsible for developing data-driven solutions for operational efficiency, cost reduction, and customer satisfaction.

23. Plaintiff reported directly to Arturo Silva (Hispanic Male), Senior Associate Data Science Director, who in turn reported to Kelly Brophy, Director of Data Science.

24. Plaintiff was the only male of Indian descent on his team.

25. From the first week of his employment, Plaintiff was subjected to discriminatory treatment based on his race and national origin. Caucasian coworkers engaged in body shaming and made discriminatory comments about Plaintiff's skin tone and features.

26. Specifically, Plaintiff's coworkers compared him to Sadiq Khan (Mayor of London) in a discriminatory context. Plaintiff reported these comments as violations of IQVIA's conduct code, but management took no action.

27. Throughout his employment, Plaintiff was systematically excluded from important project conversations by Cathy Manoff, a Caucasian woman, who deliberately kept Plaintiff off important project-related emails. Plaintiff reported this exclusion to Mr. Silva, who ignored his complaints.

28. In August 2022, during a work trip, Mr. Silva referenced an alleged "offensive interaction" at an airport but provided no details when Plaintiff requested clarification.

29. In November 2022, Josh Morgan, a Caucasian male, became hostile toward Plaintiff in a team chat after Plaintiff raised legitimate concerns about Josh's work. When Plaintiff reported this hostility to Mr. Silva, he dismissed it as "not a big deal."

30. After Plaintiff escalated his complaints to Kelly Brophy, Mr. Silva began retaliating by ignoring Plaintiff's calls and emails.

31. In December 2022, after Plaintiff took approved PTO, he was falsely accused of putting a colleague in danger by driving them to the airport.

32. In January 2023, HR issued Plaintiff a written warning about alleged offensive language with Josh, despite no evidence of such conduct. When Plaintiff filed a grievance about the warning, HR failed to investigate.

33. During this period, Plaintiff's manager made concerning statements suggesting Plaintiff "won't be around" to use a future tool, implying planned termination.

34. On March 7, 2023, Plaintiff reported his manager's concerning statements to HR.

35. On March 8, 2023, Plaintiff sought medical treatment and attended his initial therapy visit due to his deteriorating mental health condition.

36. On March 10, 2023, Plaintiff was diagnosed with adjustment disorder by Dr. Paladugu as a direct result of the discriminatory treatment he endured at work. On the same day, Plaintiff submitted FMLA paperwork requesting medical leave.

37. Plaintiff's FMLA leave request was supported by medical documentation from Dr. Paladugu, and Plaintiff also filed a concurrent short-term disability claim (Claim Number: 14015928) through Lincoln National Life Insurance Company, Defendant's disability insurance provider.

38. Throughout this period, Plaintiff was prescribed and taking medications including Propranolol 10mg for anxiety (prescribed in March 2023) and Lexapro 10mg (prescribed in May 2023) to manage his documented symptoms, which included anxiety, inability to focus, anger and frustration, sleep difficulties, and tension and nervousness.

39. During Plaintiff's FMLA leave, his manager suggested Plaintiff had ADHD and should take disability leave, further demonstrating discriminatory animus.

40. On March 21, 2023, Lincoln Financial requested additional medical records regarding Plaintiff's condition.

41. On March 31, 2023, Plaintiff submitted additional FMLA paperwork as requested.

42. During his FMLA leave period, Plaintiff was subjected to harassment by Defendant's HR benefits personnel regarding his medical condition and leave status.

43. On May 4, 2023, despite proper medical documentation supporting Plaintiff's condition, Lincoln Financial issued a denial letter for his short-term disability benefits.

44. On May 15, 2023, when Plaintiff returned to work, he was immediately placed on administrative leave while HR investigated baseless claims of "dual appointment."

45. On May 19, 2023, just four days after Plaintiff's return from FMLA leave, Defendant terminated his employment, citing alleged dual

employment as the reason for termination. This reason was pretextual, as no such dual employment existed.

## COUNT I
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
## FMLA Interference and Retaliation

46. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47. The prohibitions against interference with the exercise of rights, discrimination, and interference with proceedings or inquiries described in the FMLA, 29 U.S.C. § 2615, apply to employers with respect to eligible employees taking, or attempting to take, leave under the FMLA.

48. Under the FMLA, it is unlawful for an employer to act against an employee because the employee exercises their FMLA rights. The FMLA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual" for asserting their rights under the FMLA. 29 U.S.C. § 2615(a)(2).

49. As more particularly alleged hereinabove, at all times material herein, Plaintiff was and is an "eligible employee" and Defendant was and is

an "employer" within the meaning of the FMLA.

50. As more particularly alleged hereinabove, Plaintiff qualified for leave under the FMLA due to his diagnosed adjustment disorder with anxiety, which was later diagnosed as adjustment disorder with mixed anxiety and depressed mood.

51. Plaintiff engaged in statutorily protected activity by exercising his rights to take leave under the FMLA from March 10, 2023, through May 15, 2023.

52. Defendant knew that Plaintiff was exercising his rights under the FMLA and was aware of Plaintiff's right to protected leaves of absence under the FMLA, as evidenced by their processing of his FMLA paperwork and medical documentation.

53. Defendant interfered with Plaintiff's FMLA rights by harassing him through HR benefits personnel during his protected leave period regarding his medical condition and leave status.

54. Defendant further violated the FMLA and retaliated against Plaintiff by:

a. Immediately placing him on administrative leave upon his return from FMLA leave on May 15, 2023;

b. Excluding him from essential meetings and communications upon his return;

c. Terminating his employment just four days after his return from FMLA leave on May 19, 2023; and

d. Using a pretextual reason of alleged dual employment as grounds for termination.

55. Defendant's actions constitute willful violations of the FMLA.

56. As a direct and proximate result of Defendant's retaliatory and unlawful conduct, Plaintiff has suffered, continues to suffer, and will suffer damages including, but not limited to:

a. Lost wages and salary of $150,000 per year;

b. Lost bonus compensation of 15% of salary;

c. Lost employment benefits;

d. Lost short-term disability benefits;

e. Medical expenses;

f. Damage to professional reputation; and

g. Emotional distress and mental anguish.

57. In addition, Plaintiff is entitled to appropriate equitable relief including employment, reinstatement, and/or promotion pursuant to 29

U.S.C. § 2617(a)(1)(B).

58. Further, Plaintiff is entitled to liquidated damages as Defendant did not act in good faith and had no reasonable grounds for believing that it was not violating the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

59. Finally, Plaintiff is entitled to reasonable attorney's fees, reasonable expert witness fees, and other costs of the action pursuant to 29 U.S.C. § 2617(a)(3).

WHEREFORE, the Plaintiff, SAAKET VARMA, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, IQVIA INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant violated the FMLA and engaged in unlawful conduct and employment practices prohibited by the FMLA in that Defendant interfered with Plaintiff's FMLA rights and retaliated against Plaintiff for exercising his rights under the FMLA;

B. Award damages to Plaintiff for lost wages, salary of $150,000 per year, bonus compensation of 15%, employment benefits, and all other compensation denied or lost resulting from Defendant's

unlawful conduct and employment practices in violation of the FMLA, and to otherwise make him whole for any losses suffered because of such unlawful employment practices;

C. Award Plaintiff compensation for lost short-term disability benefits wrongfully denied during his FMLA leave period;

D. Order Defendant to reinstate Plaintiff to his former position, or in the alternative, award front pay in lieu of reinstatement;

E. Award Plaintiff liquidated damages as recoverable under the FMLA and as consistent with law;

F. Award Plaintiff compensatory damages for emotional distress, mental anguish, and damage to his professional reputation;

G. Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

H. Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action pursuant to 29 U.S.C. § 2617(a)(3); and

I. Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT II**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**RACE AND NATIONAL ORIGIN DISCRIMINATION**

60. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 45 of this Complaint as though fully set forth herein.

61. The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et seq. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's race and national origin.

62. Plaintiff is a South Asian Indian male and thus is a member of protected classes and protected by the FCRA from discrimination based on his race and national origin.

63. Defendant was an "employer" within the meaning of the FCRA during the time of these allegations.

64. Plaintiff has satisfied all procedural and administrative requirements set forth in the Florida Civil Rights Act, Section 760.01, et seq., Florida Statutes.

65. Mr. Varma was qualified for his job as Associate Data Science Director, having successfully performed his job duties throughout his

employment with Defendant.

66. During his employment at IQVIA, Plaintiff's supervisors and coworkers subjected him to different terms and conditions of employment, harassment, and discriminatory treatment based on his race and national origin, including but not limited to:

a. Body shaming and discriminatory comments about his skin tone and features;

b. Discriminatory comparisons to Sadiq Khan in a derogatory manner;

c. Systematic exclusion from important project conversations and emails;

d. False accusations regarding his conduct;

e. Unwarranted disciplinary actions; and

f. Hostile treatment following his complaints about discrimination.

67. Plaintiff was the only male of Indian descent on his team and was singled out for discriminatory treatment that non-Indian and non-South Asian employees did not experience.

68. Plaintiff repeatedly reported the discriminatory treatment to his

supervisors and Human Resources, but Defendant failed to take appropriate corrective action.

69. Instead, after Plaintiff complained about discrimination, Defendant's agents retaliated against him by:

a. Ignoring his communications;

b. Issuing unwarranted disciplinary actions;

c. Making statements suggesting his employment would be terminated; and

d. Ultimately terminating his employment under false pretenses.

70. The discriminatory treatment was so severe that it caused Plaintiff to develop adjustment disorder, requiring medical treatment and necessitating FMLA leave.

71. Defendant knew or should have known about the discrimination alleged herein but failed to take prompt remedial action to prevent or correct the discriminatory conduct.

72. Defendant is liable for the discrimination alleged herein. These actions all adversely affected the terms and conditions of Plaintiff's employment in violation of the FCRA.

73. As a direct and proximate result of Defendant's actions, Plaintiff has suffered:

a. Loss of employment;

b. Loss of income, including salary and bonuses;

c. Loss of employment benefits;

d. Medical expenses for treatment of anxiety and depression;

e. Mental and emotional distress;

f. Humiliation and embarrassment;

g. Damage to his professional reputation; and

h. Other financial and non-financial losses.

74. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's discriminatory conduct.

WHEREFORE, Plaintiff respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act of 1992, and prays for a judgment:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Plaintiff;

B. Awarding Plaintiff back pay, front pay, prejudgment interest,

and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

C. Awarding Plaintiff compensatory damages against Defendant;

D. Awarding Plaintiff reasonable attorney's fees and costs incurred in this action pursuant to Section 760.11(5), Florida Statutes;

E. Awarding such additional equitable relief as is proper and just; and

F. Granting such other and further relief as this Court deems just and proper.

**COUNT III**
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT,**
**FLORIDA STATUTES §§ 760.01-11**
**Disability Discrimination**

75. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 45 of this Complaint as though fully set forth herein.

76. Plaintiff is a qualified individual with a disability within the meaning of the FCRA.

77. On March 10, 2023, Plaintiff was diagnosed with adjustment disorder by Dr. Paladugu. This condition substantially limited several of Plaintiff's major life activities, including working, concentrating, and sleeping.

78. Plaintiff's symptoms included severe anxiety, inability to focus and complete tasks, anger and frustration, insomnia, tension, and nervousness, which significantly impaired his ability to perform his job duties. To treat these symptoms, Plaintiff was prescribed Propranolol 10mg for anxiety in March 2023 and later Lexapro 10mg in May 2023.

79. At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

80. Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

81. At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

82. The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful harassment and discrimination based on his disability.

83. Defendant was aware of Plaintiff's disability, as evidenced by Plaintiff submitting FMLA paperwork and medical documentation from his physician on March 10, 2023.

84. Despite knowledge of Plaintiff's disability, upon his return from protected medical leave on May 15, 2023, Defendant discriminated against Plaintiff by:

a. Ignoring Plaintiff's reports of discriminatory treatment, harassment, and retaliation;

b. Issuing Plaintiff a baseless written warning for alleged offensive language without evidence or proper investigation;

c. Making statements implying Plaintiff's potential termination, creating a hostile work environment;

d. Making discriminatory comments about Plaintiff's mental health and suggesting that he take additional disability leave;

e. Placing Plaintiff on administrative leave and subsequently terminating his employment shortly after returning from protected FMLA leave and short-term disability leave.;

f. Excluding him from essential meetings and communications;

g. Conducting a pretextual investigation regarding alleged dual employment; and

h. Terminating his employment just four days after his return.

85. As his employer, Defendant was obligated to guard against the harassment, disparate treatment, and discrimination of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from harassment and discrimination in the workplace.

86. Defendant's stated reason for terminating Plaintiff's employment - an alleged dual appointment infraction - was pretextual, as

Defendant's own investigation revealed Plaintiff had not performed work for any other employer during his employment with Defendant.

87. Defendant violated the FCRA by, among other things, failing to promptly correct the harassment, disparate treatment, and discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to harassment and disparate treatment because of his disability.

88. Plaintiff, by being subjected to this harassment, disparate treatment, and discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

89. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant’s failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the harassment, disparate treatment, and discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

90. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer:

a. Lost wages and benefits;

b. Emotional distress and mental anguish;

c. Damage to his professional reputation; and

d. Other financial and non-financial losses.

WHEREFORE, Plaintiff respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act of 1992, and prays for a judgment:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Plaintiff;

B. Awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

C. Awarding Plaintiff compensatory damages against Defendant;

D. Awarding Plaintiff reasonable attorney's fees and costs incurred in this action pursuant to Section 760.11(5), Florida Statutes;

E. Awarding such additional equitable relief as is proper and just; and

F. Granting such other and further relief as this Court deems just and proper.

## COUNT V
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT, FLORIDA STATUTES §§ 760.01-11
## Retaliation

91. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 45 of this Complaint as though fully set forth herein.

92. Plaintiff engaged in protected activity under the FCRA by:

a. Reporting discriminatory body shaming comments about his race and national origin to management in February 2022;

b. Complaining to Mr. Silva about being excluded from important project communications by Caucasian coworkers;

c. Escalating complaints of discriminatory treatment to Kelly Brophy in February 2023; and

d. Filing a grievance with HR regarding retaliatory disciplinary actions in February 2023.

93. At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

94. Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

95. At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

96. Following Plaintiff's protected activities, Defendant subjected him to a series of adverse employment actions, including:

a. Ignoring his complaints of discriminatory treatment;

b. Issuing an unwarranted written warning in February 2023 based on false allegations;

c. Forcing him to take medical leave by suggesting he had ADHD;

d. Harassing him during his FMLA leave through HR benefits personnel;

e. Excluding him from essential meetings upon his return

from leave on May 15, 2023; and

f. Terminating his employment on May 19, 2023.

97. A causal connection exists between Plaintiff's protected activities and the adverse employment actions, as evidenced by:

a. The temporal proximity between his complaints and the retaliatory actions;

b. The pattern of escalating adverse actions following each complaint; and

c. The pretextual nature of Defendant's stated reason for termination, as their own investigation confirmed Plaintiff had not engaged in any dual employment.

98. Defendant, as Plaintiff's employer, was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from retaliation in the workplace.

99. Plaintiff did not welcome the retaliation and did not directly or indirectly invite or solicit it by his own acts or statements.

100. At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about the retaliatory behavior directed towards Plaintiff, but did not take prompt remedial action to

eliminate the discrimination.

101. Defendant violated the FCRA by, among other things, failing to promptly correct the retaliatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to retaliation for engaging in protected activity.

102. Plaintiff, by being subjected to retaliation was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

103. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliatory conduct towards Plaintiff, deprived him of statutory rights under the FCRA.

104. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered:

a. Loss of employment and salary of $150,000 per year plus 15% bonus potential;

b. Loss of employment benefits;

c. Emotional distress and mental anguish requiring medical treatment; and

d. Damage to his professional reputation.

WHEREFORE, Plaintiff respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act of 1992, and prays for a judgment:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Plaintiff;

B. Awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

C. Awarding Plaintiff compensatory damages against Defendant;

D. Awarding Plaintiff reasonable attorney's fees and costs incurred in this action pursuant to Section 760.11(5), Florida Statutes;

E. Awarding such additional equitable relief as is proper and just; and

F. Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 21st day of July 2025.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com